### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 22-10783-smr |
| | § | |
| **JUST ONE DIME COACHING, LLC,** | § | Chapter 7 |
| | § | |
| Debtor. | § | |
| | § | |

---

**MINNS FIRM CLIENTS,**

    Plaintiff,                                       Adv. Pro. No. 23-01036-smr

    vs.

**DANILO VARRIALE; DANMARK, INC.;
DANVID, f/k/a BEARDMAN COMPANY CORP.;
DAGABIA, INC.; DSD IMPORTS BROS., LLC;
BRETT GEORGE; N2 ECOM, LLC; AKH
INVESTMENTS, LLC; BOH SOLUTIONS, LLC;
DAVID LOPEZ; VICTORIA ECOM, LLC;
LUXEUP, INC.; VICTORIA STATE, LLC; APPS
INNOVATION, INC.; PATRICK CUPILLARI;
AND THE SKUNK LABS, LLC; TRAVIS SETH
KNIEP; JOSIAH KNIEP; KIMBERLY KNIEP;
AND AUDREY "ATALIE" KNIEP,**

    Defendants.

### MOTION OF PATRICK CUPILLARI, THE SKUNK LABS, LLC, 324 MAIN STREET PROPERTY, LLC, AND PROPHET CONSULTANTS, LLC TO DISMISS AMENDED ADVERSARY COMPLAINT FILED BY MINNS FIRM CLIENTS

    **This pleading requests relief that may be adverse to your interests.**

    **If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

    **A timely filed response is necessary for a hearing to be held.**

TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

Patrick Cupillari, Skunk Labs, LLC, 324 Main Street Property, LLC, and Prophet Consultants, LLC (collectively, the "New Jersey Based Defendants"), by and through their attorneys, Rabinowitz, Lubetkin & Tully, LLC and McGinnis Lochridge LLP, hereby file this, their *Motion to Dismiss Adversary Complaint Filed by Minns Firm Clients* (the "Motion"), and respectfully show unto the Court the following:

## **INTRODUCTION**

1.      The New Jersey Based Defendants bring this motion to dismiss the Amended Complaint of the Minns Firm Clients for failure to state a claim on numerous grounds.

2.      On November 23, 2022, Just One Dime Coaching, LLC (the "Debtor") filed a Voluntary Petition pursuant to the provisions of Chapter 7 of the Bankruptcy Code.

3.      On November 23, 2022, Randolph N. Osherow (the "Trustee") was appointed as interim Chapter 7 Trustee for the Debtor's bankruptcy estate and continues to serve as Trustee herein.

4.      Prior to the commencement of the Debtor's bankruptcy proceeding, the Minns Firm Clients filed five District Court suits against the Debtor and various parties with whom the Debtor contracted.  The District Court actions assert (i) breach of contract; (ii) conspiracy to commit fraud; (iii) unjust enrichment; (iv) fraudulent transfer claims; and (v) the failure to register securities claims.  The New Jersey Based Defendants were not named as defendants in any of the pre-petition suits.  Those District Courts complaints are public records which the Court can consider on this motion to dismiss.

5.      On November 28, 2023, the Minns Firm Clients filed the initial adversary proceeding Complaint which commenced the action to which this dismissal motion relates.  That initial Complaint asserted breach of contract claims (based on a third party beneficiary theory),

2

conspiracy to commit fraud claims, and unjust enrichment claims, all of which underlying causes of action were also asserted in the pre-petition District Court actions.

6.     The initial Complaint attached the Amazon Store Builder Independent Partner Agreement between the Debtor and N2 Ecom LLC, and asserts such form was the contract utilized between the Debtor and the "Brand Builders" which purportedly supports plaintiffs' third party beneficiary breach of contract claims.  See, Exhibit "2" of plaintiffs' initial Complaint.  The New Jersey Based Defendants were added as additional defendants to the adversary proceeding via the Complaint, despite not being defendants in any of the pre-petition District Court actions.  The Debtor, who was a defendant in all the District Court matters, was not included as a defendant in the adversary proceeding.

7.     The Debtor and the Minns Firm Clients are parties to agreements, called "Services Agreements," also referenced in the Amended Complaint, and attached to the District Court complaints, under which the Debtor became obligated to perform certain activities for the Minns Firm Clients.  Pursuant to an Amazon Store Builder Independent Partner Agreement (the "Agreement") between the Debtor and Skunk Labs, LLC ("Skunk Labs"), one of the New Jersey Based Defendants, Skunk Labs agreed to perform certain activities for the Debtor.  The Minns Firm Clients are not intended beneficiaries of the commercial contract between the Debtor and Skunk Labs, nor do the Minns Firm Clients qualify as a donee or creditor beneficiary under the Agreement.

8.     On June 22, 2022, in connection with the termination of the relationship between the Debtor and Skunk Labs, the Debtor voluntarily and knowingly waived and released any and all claims against Skunk Labs.

9.      Defendant Patrick Cupillari is the principal of Skunk Labs.  The other New Jersey Based Defendants are affiliates of Mr. Cupillari that had no involvement with the Debtor or any of its customers.  The inclusion of the New Jersey Based Defendants other than Skunk Labs in the amended adversary proceeding appears to be based solely on the identification of affiliates of Patrick Cupillari resulting from wide ranging corporate searches performed by the Minns Firm Clients, without any consideration of whether the subsequently identified entities had any involvement with the Debtor or the Minns Firm Clients themselves.

10.     On January 5, 2024, the Minns Firm Clients amended their adversary proceeding Complaint.

11.     By motion dated December 11, 2023, the Trustee seeks to assign to the Minns Firm Clients certain of the estate's causes of action, if any exist, against the defendants in the adversary proceeding, including the New Jersey Based Defendants.

12.     Following an objection to that motion by the New Jersey Based Defendants, the Court scheduled a hearing on the proposed sale for February 6, 2024.

## THE MOTION TO DISMISS

13.     As set forth below, even deeming the allegations of fact contained in the Amended Complaint as true, and considering the exhibits attached to the initial Complaint, and matters of public record, including the pre-petition District Court suits, and exhibits attached to them, the Court should dismiss the Amended Complaint with regard to the New Jersey Based Defendants.

14.     Federal Rule 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Tolon v. Hollingsworth LLC, 2023 U.S. Dist. LEXIS 200470, at *2 (W.D.

Tex. Nov. 7, 2023) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at *3 (quoting Iqbal, 556 U.S. at 678).  A plaintiff must provide "enough factual allegations to draw the reasonable inference that the elements exist." Ibid. (quoting Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc., 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014)).

15.     Although all factual allegations from the complaint should be taken as true, and the facts must be construed in the light most favorable to the nonmoving party, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ibid. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth.  Id. at *4 (quoting Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557)).

## THE AMENDED COMPLAINT

16.     As indicated, the Amended Complaint contains seven counts.

17.     Count 1 asserts a claim by plaintiffs as alleged third party beneficiaries of the Agreement between the Debtor and Skunk Labs.  The New Jersey Based Defendants are identified in the Amended Complaint as one of the "Brand Builders," and the Amended Complaint references in paragraph 52 the "independent contractor" contracts the Debtor had with each "Brand Builder."  The initial Complaint attached the form Amazon Store Builder Independent Partner Agreement between the Debtor and one of the Brand Builders.  As concerns Skunk Labs, that contract is the

Agreement between the Debtor and Skunk Labs, and contains the same terms as the contract attached as Exhibit "2" to the initial Complaint.

18.     Count 2 asserts a conspiracy to commit fraud.

19.     Count 3 asserts a conspiracy to violate the Texas Deceptive Trade Practices – Consumer Protection Act.

20.     Count 4 asserts a conspiracy to sell unregistered securities in violation of the Securities Act of 1933.  The "securities" which form the basis of this allegation are the contracts between the Debtor and the Minns Firm Clients, the "Services Agreements" attached to the District Court complaints, agreements to which none of the New Jersey Based Defendants are a party.  See paragraph 104 of the Amended Complaint, "the contracts into which [plaintiffs] entered with Seth and Josiah Kniep and the JOD entities [the Debtor] constitute unregistered securities."

21.     Count 5 asserts the same conspiracy to sell unregistered securities, but this count alleges violation of the Texas Securities Act.  Again, the "securities" which form the basis of this allegation are the contracts between the Debtor and the Minns Firm Clients, that is, the Services Agreements.

22.     Count 6 asserts alleged fraudulent transfers under the Texas Uniform Fraudulent Transfers Act and describes the transfers as "transfers of funds Plaintiffs invested in the [Debtor's]…program."

23.     Count 7 asserts a claim for unjust enrichment.

## THE COMPLAINT LACKS THE REQUISITE ALLEGATIONS BY EACH PLAINTIFF AGAINST THE NEW JERSEY BASED DEFENDANTS

24.     "When multiple plaintiffs file a complaint against multiple defendants for several different causes of action, the factual allegations in the complaint must specifically identify which plaintiffs are bringing which claims against which defendants so that each defendant has fair

notice." Roche Diagnostics Corp. v. Shaya, 2020 U.S. Dist. LEXIS 67603, at *5-6 (E.D. Mich. Apr. 17, 2020) (citing Nafziger v. McDermott Int'l, Inc., 467 F.3d 514, 519-20 (6th Cir. 2006, in which court affirmed Rule 8 dismissal of complaint filed by 28 plaintiffs against multiple defendants for various contract and discrimination claims for lack of specificity). Moreover, each plaintiff must show that he or she personally suffered some injury as a result of the defendant's conduct. See, e.g., Cain v. Porch, 2020 U.S. Dist. LEXIS 259294 at *13-14 (N.D. Cal. July 23, 2020) ("Article III requires '[e]very plaintiff [to] have standing to litigate a grievance before a federal court.'")

25.     The Complaint lacks specific allegations from each plaintiff as to the New Jersey Based Defendants' involvement in the alleged acts, or that any specific conduct of the New Jersey Based Defendants directly and proximately caused damages to any specific plaintiff.

26.     The only specific factual assertions in the Amended Complaint, as opposed to generic legal conclusions directed generally to all defendants, asserts conduct of the Debtor and its principals.  See for example:

> (a) Paragraph 5 "The Minns Firm Clients … conducted business with [the Debtor] prior to the Petition Date"; (b) Paragraph 36, "All work would be done by [the Debtor]; (c) Paragraph 41, "[The Debtor] recruited investors; (d) Paragraph 42 "[The Debtor] pledged…"; (e) Paragraph 44 "[The Debtor] promised…"; (f) Paragraph 45 "[The Debtor] did not…"; (g) Paragraph 46 "[The Debtor] would also represent…"; (h) Paragraph 49 "Plaintiffs, relied on [the Debtor's] promises…"; (i) Paragraph 58 "[The Debtor] claimed…"; (j) Paragraph 59, "[Debtor] handled its investor clients"; and (k) Paragraph 63 "Kniep devised and implemented a scheme to defraud…"

27.     Despite not attributing any expressly pled factual conduct to the New Jersey Based Defendants, the Amended Complaint then concludes universally, without any factual support, "Defendants engaged in an unconscionable action" (para. 91), "Defendants falsely represented" (para. 92), "Defendants fraudulently employed" (para. 93).

28.     Thus, the Amended Complaint lacks the specificity required for fair notice when multiple plaintiffs sue multiple defendants.  As concerns the New Jersey Based Defendants, it contains only naked assertions devoid of factual enhancement and mere conclusory statements which are not entitled to the presumption of authority.

## THE COURT LACKS SUBJECT MATTER JURISDICTION

29.     Bankruptcy courts have original jurisdiction of all cases under title 11 and original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.  28 U.S.C. §§ 157, 1334.  Because state law claims by non-debtors against non-debtors do not have any effect on the estate, bankruptcy courts have long taken the position that they lack jurisdiction over such claims.  See, e.g., Caraway v. Klein (In re Klein), 2013 Bankr. LEXIS 4674, at *23-24 (B.A.P. 9th Cir. Oct. 3, 2013); Malesovas v. Sanders, 2005 U.S. Dist. LEXIS 42344, at *12-13 (S.D. Tex. May 16, 2005); Platinum Mhmt. v. Binh Huu (In re Portland Injury Inst. LLC), 2023 Bankr. LEXIS 880, at *25-26 (Bankr. D. Or. Mar. 31, 2023) ("Under 28 U.S.C. § 1334, this court has jurisdiction over claims that arise under the Bankruptcy Code, arise in a bankruptcy case, or are related to a bankruptcy case.  [Defendant's counterclaims] do not arise under the Bankruptcy Code, and they did not arise in the bankruptcy case.  Nor do they relate to the case, because there is no possible outcome of those claims that could have any effect on the bankruptcy case.  These are state-law claims by a nondebtor against another nondebtor.  They do not belong in bankruptcy court.").

30.     Here, the plaintiffs, who are non-debtors, seek to assert purely state law claims, on behalf of not the estate but themselves alone, against parties who are also non-debtors. The claims do not arise under the Code or in the Debtor's case. Thus, this Court lacks jurisdiction over the claims.

**TO THE EXTENT THE COMPLAINT SEEKS TO ADDRESS CLAIMS WHICH CURRENTLY BELONG TO THE DEBTOR AND WHICH ARE ANTICIPATED TO BECOME VESTED IN THE MINNS FIRM CLIENTS UPON BANKRUPTCY COURT APPROVAL OF THE SETTLEMENT AND SALE, THE MINNS FIRM CLIENTS CURRENTLY LACK STANDING**

31.     Given the recitation in the Complaint of the Minns Firm Clients' intended acquisition of certain claims which currently belong to the Debtor (paragraph 8 of the Amended Complaint), and the upcoming Trustee's motion to sell those estate claims, it is unclear whether the intention of the Complaint is to address only whatever limited current claims, if any, the Minns Firm Clients believe they own, or whether the Complaint is simply an anticipatory filing dependent on Bankruptcy Court approval of the transfer of the Debtor's claims to the Minns Firm Clients.

32.     To the extent the Complaint seeks to pursue any claims held by the Debtor, the Minns Firm Clients do not currently own the subject claims and as a result, the Minns Firm Clients lack standing to pursue those claims. Thus, dismissal on that basis, or an amendment acknowledging only direct claims held by the Minns Firm are being pursued, is necessary.

**EVEN IF THE COURT HAS JURISDICTION, THE COURT SHOULD DISMISS EACH COUNT**

**As for the Breach of Contract Claim, the Subject Contract Does Not, On Its Face, Demonstrate an Express Intent to Benefit Plaintiffs**

33.     "A third-party stranger to a contract may enforce its terms only if the contracting parties 'intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit.'" Nations Constr. Mgmt. v. Max Specialty Ins. Co., 2010 U.S. Dist. LEXIS 160813, at *8 n.2 (S.D. Tex. July 15, 2010) (quoting

Basic Capital Mgmt. v. Dynex, 254 S.W.3d 508, 514 (Tex. App. 2008)).  Courts presume that parties to a contract did not intend a third-party to benefit unless such an intent "clearly appears."  Ibid. (quoting MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999)).  "If there is any reasonable doubt as to an intent to confer a direct benefit, the third-party beneficiary claim must fail."  Dennis Jewelry Co. v. Sonitrol Mgmt. Corp., 2003 Tex. App. LEXIS 804, at *4 (Tex. App. Jan. 29, 2003) (quoting MJR Corp. v. B & B Vending Co., 760 S.W.2d 4, 16 (Tex. App. 1988)).

34.     To enforce a contract on a third party beneficiary theory, the third party must qualify as either a donee or creditor beneficiary of the contract, and not someone who incidentally benefits from the contract's performance.  Nations Constr., 2010 U.S. Dist. LEXIS 160813, at *8 n.2 (citing Basic Capital, 254 S.W.3d at 515-16).  A donee beneficiary is one to whom the performance promised will, when rendered, come as a pure donation.  Ibid.  If the performance promised in the contract will inure to the benefit of a third party in satisfaction of a legal duty owed to that third party, then the third party is a creditor beneficiary.  Ibid. (citing Basic Capital, 254 S.W.3d at 516 n.8).  "Simply because 'a person is directly affected by the parties' conduct, or that he 'may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary.'"  Johnson v. Patton, 2018 U.S. Dist. LEXIS 233415, at *17 (N.D. Tex. Feb. 22, 2018) (quoting Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1075 (5th Cir. 2002)), aff'd, 740 F. App'x. 90 (5th Cir. Oct. 18, 2018).

35.     Citing these principles, Texas federal and state courts routinely reject third-party beneficiary status in circumstances similar to those here.  See, e.g., Newman v. Plains All Am., 2020 U.S. Dist. LEXIS 246840, at *9-10 (W.D. Tex. June 25, 2020). Patton, 2018 U.S. Dist. LEXIS 233415, at *19-20; Nations Constr., 2010 U.S. Dist. LEXIS 160813, at *8 n.2 (denying

third-party beneficiary status where "[n]othing in the record suggests that [plaintiff] is either a donee or a creditor beneficiary."); <u>Soyars v. Rothchild Family P'ship #2, Ltd.</u>, 2016 Tex. App. LEXIS 8548, at *8-9 (Tex. App. Aug. 9, 2016) ("[Alleged third-party beneficiary] also has not demonstrated that he qualifies as either a donee beneficiary or a creditor beneficiary. <u>In re E. Rio Hondo Water Supply Corp.</u>, 2012 Tex. App. LEXIS 9098, at *17-18 (Tex. App. Oct. 29, 2012); <u>Dennis Jewelry</u>, 2003 Tex. App. LEXIS 804, at *5-6 ("In order for [appellant] to recover as third-party beneficiary of the monitoring contract, [appellant] had to overcome the presumption that [contracting parties] contracted for themselves alone, and instead, contracted for [appellant's] benefit as well.  [Appellant] claims it was designated sufficiently by reference to 'subscriber.'

36.     Here, the plaintiffs do not even allege that they are "donee" or "creditor" beneficiaries.  Amended Complaint ¶¶ 71-73.  Also while the plaintiffs allege that Exhibit A to the Independent Partner Agreements stated that the Brand Builders would provide a long list of services to the Debtor's investors, Amended Complaint ¶ 67, Exhibit A provides only that "Partner will do the following."  It does not provide that the Brand Builders will perform any services for any of the Debtor's alleged "investors," namely its customers.  Instead, it merely lists the Brand Builders' required duties under the Agreements, spelling out duties owed to the Debtor, not the plaintiffs.  In addition, only the first enumerated service ("Open a new Amazon store") even refers to the "Client."  Hence, at best, any benefits are only incidental.  Next, the Agreement does not bestow on any "Client" the right to enforce the Agreement.  Finally, the plaintiffs are unable to even plead with any specificity.  <u>See</u>, <u>e.g.</u>, Amended Complaint ¶¶ 68 (referring to only "some of the Brand Builders" without specification), 69 (alleging that "the Defendant Brand Builders were likely servicing the accounts of JOD investors").

37.     Under these circumstances, the plaintiffs fail to meet their burden of establishing that they are third-party beneficiaries.  At the very least, reasonable doubt on the issue exists, and thus, the plaintiffs' breach of contract claim must be dismissed.

**To the Extent the Minns Firm Clients' Claims Arise Out of The Amazon Store Builder Independent Partner Agreement Between the Debtor and the New Jersey Based Defendants, Which is the Basis of the Asserted Third Party Beneficiary Breach of Contract Claim, Arbitration Is Required And the Complaint Should Be Dismissed Pending Arbitration**

38.     Moreover, because the Minns Firm Clients' breach of contract claim relies upon the Agreement, which includes a broad, mandatory arbitration clause, that provision is binding on the Minns Firm Clients, even as an alleged third party beneficiary.  See, generally, Jody James Farms, JV v. Altman Grp., Inc., 547 S.W.3d 624 (Tex. 2018).[1]

39.     As set forth in the Amazon Store Builder Independent Partner Agreement between the Debtor and the New Jersey Based Defendants, and which contains the identical terms and conditions as the "independent contractor" agreements referenced in paragraph 52 of the Amended Complaint, one version of which was attached to plaintiffs' initial adversary proceeding Complaint (the agreement as between the Debtor and N2 Ecom LLC, as Exhibit "2") arbitration is required for all claims arising out of or relating thereto.  See paragraph 25.1 of Exhibit "2" to the initial Complaint.  There is no question that the Minns Firm Clients' Count 1 constitutes a claim arising out of or relating to Agreement.  The Amended Complaint expressly references in paragraph 52 the "independent contractor" agreements.  The only agreement to which Skunk Labs is a party, is the Agreement.  Such is the only contact which could support a third party beneficiary claim against Skunk Labs, and it includes the broad arbitration provision.

---

[1] Although not relevant to the third party beneficiary argument, the Services Agreements between the plaintiffs and Debtor, which are attached to the pre-petition District Court suits, contain a similar broad, mandatory arbitration clause, which is binding on the plaintiffs.

40.     It is indisputable that arbitration provisions are to be enforced in bankruptcy, absent an express statutory intention to avoid their application.  See, Highland Cap. Management LP, (Bankr. N.D. Tex. 2021), and cases cited therein.  See, also, James P. Barkman, Inc. v. Granger Constr. Co., 170 B.R. 321 (Bankr. E.D. Mich. 1994) (dismissing adversary proceeding based on contractual arbitration provision).

41.     A bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving "core" bankruptcy proceedings under 28 U.S.C. § 157(b).  Gandy v. Gandy (In re Gandy), 299 F.3d 489, 495 (5th Cir. 2002).

42.     Moreover, arbitration provisions are enforced against non-signatories in third party beneficiary situations.  See, Jody James Farms, JV v. Altman Grp., Inc., 547 S.W.3d 624 (Tex. 2018).

43.     Further, "[l]ike other contracts, arbitration agreements may be enforced against third-party beneficiaries if the parties to the contract intended to secure a benefit to that third party and the parties entered the contract directly for the third party's benefit."  SCI Tex. Funeral Servs., LLC v. Gonzalez, 2023 Tex. App. LEXIS 3569, at *9 (Tex. App. May 25, 2023) (citing In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 677 (Tex. 2006)).  Thus, to the extent plaintiffs claim to be third party beneficiaries, they are bound by the arbitration clause.

44.     Under these circumstances, the arbitration provision must be enforced, requiring dismissal of the Amended Complaint.

**To the Extent the Minns Firm Clients' Complaint Sounds In Fraud, Because the Claims Arise Out Of, and Constitute, Alleged Breaches Of Contract, the Economic Loss Doctrine Prohibits Their Prosecution**

45.     The economic loss doctrine prohibits the assertion of claims for fraud, excluding only claims for fraud in the inducement, when the substance of the claim is breach of contract.  Ibe v. Jones, 836 F.3d 516, 526 (5th Cir. 2016).  The Minns Firm Clients' Amended Complaint by its

express terms in Count 1 is for breach of contract premised on a third-party beneficiary theory. Moreover, in substance, the allegations against the New Jersey Based Defendants all constitute alleged breaches of Skunk Lab's contract with the Debtor. Given that the Minns Firm Clients' claims sound in breach of contract, the Minns Firm Clients are precluded from pursuing the conspiracy to commit fraud and unjust enrichment claims under the economic loss doctrine. See, Spring St. Apts. Waco, LLC v. Phila. Indem. Ins. Co., 2017 U.S. Dist. LEXIS 217120, at *17 (W.D. Tex. Apr. 5, 2017) (dismissing conspiracy to commit fraud based on economic loss doctrine); Dominguez v. Ben. Fin. 1, Inc., 2015 U.S. Dist. LEXIS 184166, at *15 (S.D. Tex. Feb. 4, 2015 (dismissing unjust enrichment claim based on economic loss doctrine).

### As for the Conspiracy to Commit Fraud Act

46.     An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result. First United Pentecostal Church of Beaumont v. Parker, 514 S.W.3d 214, 222 (Tex. 2017) (citing Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005)).

47.     An actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means. Ibid. (citing ERI Consulting Eng'rs, Inc. v. Swinnea, 318 S.W.3d 867, 881 (Tex. 2010)). This element inherently requires a meeting of the minds on the object or course of action. Ibid. Thus, an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement. Ibid. (citing Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996)). It follows that proof of a joint intent to engage in the

conduct that resulted in the injury, without more, does not establish a cause of action for civil conspiracy.  Control & Applications LLC Houston v. Abdallah, 2022 Tex. App. LEXIS 6348, at *37 (Tex. App. Aug. 25, 2022) (citing Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996)).

48.     Failure to properly allege each element of a conspiracy claim requires dismissal under Rule 12(b)(6).  Austin v. Brown & Fortunato, PC (In re Uplift Rx, LLC), 2023 Bankr. LEXIS 2050, at *54-60 Bankr. S.D. Tex. Aug. 31, 2023) (dismissing liquidating trustee's conspiracy to commit fraud claim because trustee failed to allege that defendant had agreed to defraud certain manufacturers, or that it was aware of or helped to craft the alleged fraud, or that defendant did anything unlawful in furtherance of the alleged conspiracy).

49.     To hold a defendant liable for conspiracy to commit fraud, a plaintiff must establish (1) a conspiracy; and (2) that the defendant agreed with one or more of the conspirators about the claimed illegal object of the conspiracy and intended to have brought it about.  Id. at *55 (Bankr. S.D. Tex. Aug. 31, 2023) (citing In re Enron Corp. Secs., Derivative & ERISA Litig., 623 F. Supp. 2d 798, 809 (S.D. Tex. 2009)).

50.     The heightened pleading standards of Rule 9(b) apply to pleading a state law claim of conspiracy to commit fraud.  Tedder v. USF&G Specialty Inc. Co., 2011 U.S. Dist. LEXIS 50339, at *7 (S.D. Tex. May 11, 2011) (citing U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 193 (5th Cir. 2009)).  If the plaintiff fails to state a claim for fraud underlying their civil conspiracy claim, the civil conspiracy claim must be dismissed too.  Ibid. (citing Allstate Ins. Co. v. Receivable Finance, Inc., 501 F.3d 398, 414 (5th Cir. 2007)).

51.     Here, the plaintiffs fail to allege the basic elements of a fraud claim, whether against the New Jersey Based Defendants, or any of the defendants.  Amended Complaint ¶¶ 75-84.

52.     Second, the plaintiffs allege that the Brand Builders only attended meetings. Amended Complaint ¶ 79. They fail to allege, much less with any particularity, that the Brand Builders reached a meeting of the minds with the other defendants, or that that the Brand Builders were aware of any intended harm or proposed wrongful conduct at the outset, or that they actually did anything unlawful in furtherance of the alleged conspiracy. Id. ¶¶ 79-83.

**As for the Conspiracy to Violate the Deceptive Trade Practices Act**

53.     To state a claim under the Texas Deceptive Trade Practices Act (the "DTPA"), a plaintiff must show: (1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant violated a specific provision of the DTPA; and (4) the defendant's violation is a producing cause of plaintiff's damages. Bustos v. Invierte En Tex., LLC, 2023 U.S. Dist. LEXIS 151761, at *19 (S.D. Fla. Aug. 9, 2023) (citing Henry v. CitiMortgage, Inc., 2011 U.S. Dist. LEXIS 64420, 2011 WL 2261166, at *6 (E.D. Tex. May 10, 2011)). In federal courts, claims under the Texas Deceptive Trade Practices Act are subject to the heightened pleading requirements of Rule 9(b). Ibid. (citing Lopez v. United Prop. & Cas. Ins. Co., 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016)).

54.     Under the DTPA, a "consumer," with exceptions not relevant here, is a person "who seeks or acquires by purchase or lease, any goods or services." Stroud v. Meister, 2001 U.S. Dist. LEXIS 13282, at *9 (N.D. Tex. Aug. 23, 2001) (quoting Tex. Bus. & Comm. Code Ann. § 17.45(4)). A security is neither a good nor a service under DTPA. Reynolds v. M. Rinson & Co., 1996 U.S. Dist. LEXIS 22587, at *9 (S.D. Tex. Feb. 12, 1996); see also Stroud, 2001 U.S. Dist. LEXIS 13282, at *9.

55.     Here, the plaintiffs' DTPA claim suffers from a number of deficiencies.  First, the plaintiffs characterize their contracts with the Knieps and the JOD entities as "securities."  Amended Complaint ¶ 104.  Thus, the DTPA is inapplicable for this reason alone.

56.     Second, the plaintiffs fail to specify the provisions of the DTPA that were allegedly violated here.  Amended Complaint ¶ 90.

57.     Third, the plaintiffs fail to allege specifics as to the Brand Builders, or to the New Jersey Based Defendants in particular.  If anything, their allegations are inconsistent with earlier paragraphs, in which the plaintiffs allege that only the Debtor engaged in the acts at issue.  Compare Amended Complaint ¶¶ 41-49, 58-59 (alleging that the Debtor "lured" the plaintiffs, that the Debtor made certain representations to the plaintiffs, and that the Debtor recruited the plaintiffs through advertising), with id. ¶¶ 91-97 (alleging that all of the defendants engaged in these same acts).  Also, even in Count 3, the plaintiffs allege that it was Kniep and the Kniep Defendants who committed fraud.  Id. ¶¶ 95-96.  And in still other instances, they fail to allege who made the various representations.  Id. ¶¶ 51 (alleging that "[t]he Plaintiffs were told that the Brand Builders were a part of [the Debtor]"), 89 (alleging that the plaintiffs "were also told that the Brand Builders also had various titles").

58.     Fourth, a plaintiff asserting a DTPA claim must plead damages in detail.  See, e.g., MFG Fin., Inc. v. Hamlin, 2021 Tex. App. LEXIS 4331, at *10-11 (Tex. App. June 3, 2021).  Here, the plaintiffs allege damages only by way of an empty platitude.  Amended Complaint ¶ 97.

59.     Finally, a plaintiff must give notice of a DTPA claim to a defendant 60 days before filing suit.  Tex. Bus. & Com. Code Ann. § 17.505(a).  When a plaintiff fails to provide pre-action notice under subsection, the trial court must abate the suit until the plaintiff serves notice in compliance with the Act.   Tex. Bus. & Com. Code Ann. § 17.505(d), (e).  Here, the plaintiffs do

not allege that they, and they in fact did not, give proper notice of their alleged claims to the New Jersey Based Defendants. Thus, at the very least, this action must be abated pending proper notice of his action.

### As for the Alleged Securities Law Violations

60.     The plaintiffs maintain that their "Service Agreements" with the Knieps and other the Debtor entities qualify as "investment contracts that constitute securities." Amended Complaint ¶ 105. Here, too, they are mistaken.

61.     Under the test set forth by the Supreme Court in the <u>Howey</u> decision, an investment contract qualifies as a security if it meets three requirements: (1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of others. <u>Securities Exchange Commission v. Arcturus Corp.</u>, 928 F.3d 400, 409 (5th Cir. 2019) (citing <u>Securities Exchange Commission v. W.J. Howey Co.</u>, 328 U.S. 293 (1946)).

62.     Here, the plaintiffs cite to no provision in any Service Agreement pursuant to which the plaintiffs "invested" money, in a "common enterprise," on an expectation of "profits" <u>solely</u> from the efforts of others. Amended Complaint ¶¶ 104-05. Indeed, by definition, a "Service Agreement" does not contemplate "investment."

63.     Also, here too, the plaintiffs raise allegations inconsistent with earlier paragraphs. <u>Compare</u> Amended Complaint ¶¶ 48, 108 (alleging that Kniep or the Knieps recruited the plaintiffs), <u>with</u> ¶ 106 (alleging that the defendants had "intimate knowledge" of the recruitment of and in fact they recruited the plaintiffs).

64.     Finally, at the very least, the plaintiffs fail to satisfy Rule 8 because they allege only that Brand Builders assisted in the recruitment of the plaintiffs, without any specifics.

65.     The Texas Supreme Court has adopted a version of the <u>Howey</u> test to determine when investment contracts qualify as securities under the Texas Securities Act.  <u>Carr v. Barnett</u>, 2022 U.S. Dist. LEXIS 89196, at *16-17 (N.D. Tex. May 18, 2022) (citing <u>Life Partners, Inc. v. Arnold</u>, 464 S.W.3d 660, 670 (Tex. 2015)).  Texas courts look for an "investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."  <u>Ibid.</u> (quoting <u>United Housing Foundation Inc. v. Forman</u>, 421 U.S. 837, 840 (1975) (emphasis omitted)).

66.     As noted above in connection with Count 4 for "Conspiracy to Sell Unregistered Securities in Violation of the Securities Act," the plaintiffs cite to no provision in any Service Agreement pursuant to which the plaintiffs made an "investment," in a "common venture," premised on an expectation of "profits" to be derived from the efforts of others. Amended Complaint ¶¶ 118-19.  The anticipated profits here were to be obtained from the sale by plaintiffs of products on Amazon.  It was their efforts, their sales, that would generate income, not efforts of others.

**As for the Fraudulent Transfer Claim**

67.     The plaintiffs appear to misunderstand the "TUFTA" fraudulent transfer statute, which allows a creditor of a debtor-transferor to recover transfers from a transferee.  Tex. Bus. & Com. Code §§ 24.005, 24.006.

68.     Here, the plaintiffs allege that "the fraudulent transfers were made *by* Defendants for their own financial benefit."  Amended Complaint ¶ 131-32 (emphasis added).  Having failed to allege that they were creditors of the New Jersey Based Defendants, they lack standing to assert such a claim.

69.     Even assuming that the count can somehow be interpreted to seek avoidance of transfers by the Debtor to the New Jersey Based Defendants, plaintiffs fail to allege basic, threshold facts required to support such a claim.  More specifically, they fail to allege under section 24.005(b) and consistent with Rule 9(b) any badges of fraud that might indicate fraudulent intent; that the Debtor received less than reasonably equivalent value in exchange for any transfers; or that the Debtor was insolvent or was rendered insolvent as a result of the transfers.  Dismissal is thus required.

### As for the Unjust Enrichment Count

70.     Under Texas law, unjust enrichment is not an independent cause of action.  Midwestern Cattle Mktg., LLC v. Legend Bank, NA, 999 F.3d 970, 972 (5th Cir. 2021) (noting "Texas state courts' understanding that unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself" (citing Argyle Indep. Sch. Dist. ex rel. Bd. of Trs. v. Wolf, 234 S.W.3d 229, 246 (Tex. App. 2007)); and noting that "[o]ther federal courts applying Texas law agree" (citing Villareal v. First Presidio Bank, 283 F. Supp. 3d 548, 553 n.5 (W.D. Tex. 2017))).  Plaintiffs admit this reality in the Amended Complaint itself.

71.     Thus, Count 7, in which the plaintiffs assert an independent claim of unjust enrichment, must be dismissed.

### <u>Conclusion</u>

For the foregoing reasons, the Minns Firm Clients' Amended Complaint should be dismissed.

Dated: January 23, 2024

Respectfully submitted,

By:    */s/ Jeffrey A. Cooper*

    Jeffrey A. Cooper
    Rabinowitz, Lubetkin & Tully, LLC
    293 Eisenhower Parkway, Suite 100
    Livingston, NJ 07083
    State Bar No. (NJ) 022401980
    State Bar No. (NY) 2137073
    Telephone: (973) 597-9100
    Facsimile: (973-597-9119)
    E-mail: jcooper@rltlawfirm.com

   And

By:    */s/ Christopher L. Halgren*

    Christopher L. Halgren
    State Bar No. (TX) 24069859
    McGinnis Lochridge LLP
    609 Main St, Suite 2800
    Houston, TX 77002
    Telephone: (713) 615-8539
    Facsimile: (713) 328-1839
    E-mail: chalgren@mcginnislaw.com

    ATTORNEYS FOR PATRICK
    CUPILLARI, SKUNK LABS, LLC, 324
    MAIN STREET PROPERTY, LLC, AND
    PROPHET CONSULTANTS, LLC

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned hereby certifies that, on the 23rd day of January 2024, she personally caused true and correct copies of the foregoing pleading, together with all attachments hereto, to be served by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to the parties receiving same through such system as listed in the attached Matrix, and on the parties shown on the below service list, via first class U.S. Mail and/or e-mail.

| | |
|---|---|
| Jay H. Ong, Esq. | Rain Levy Minns Udall, Esq. |
| Thanhan Nguyen | Minns Law Firm, P.C. |
| MUNSCH HARDT KOPF & HARR, P.C. | d/b/a Rain Minns Law Firm |
| 1717 West 6th Street, Suite 250 | 4412 Spicewood Springs Rd., Suite 500 |
| Austin, Texas 78703 | Austin, Texas 78759-8583 |
| *Counsel to the Chapter 7 Trustee* | *Counsel to the Minns Firm Clients* |

By: */s/ Christopher L. Halgren*
    Christopher L. Halgren